IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 17-cv-03074-RBJ

LARRY EASTMAN,
MARY EASTMAN, and
JASON EASTMAN,

      Plaintiffs,

v.

NPL CAPITAL, LLC,

      Defendant.

---

## ORDER

---

On January 8, 2019, I granted NPL Capital, LLC, ("NPL")'s motion to dismiss finding that NPL's efforts to nonjudicially foreclose on Jason Eastman's home fell outside of the purview of the Fair Debt Collection Practices Act ("FDCPA"). ECF No. 57. I noted that *Obduskey v. Wells Fargo*, 879 F.3d 1216 (10th Cir. 2018) was "a case on which the magistrate judge and I have heavily relied in our analysis" and had been granted certiorari at the time of my order. I stated that "given that there is a reasonable possibility that the law binding on this Court will change, I stay the entry of a final judgment pending the Supreme Court's decision in *Obduskey*."

The Supreme Court affirmed the Tenth Circuit's holding, *Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029 (2019), and defendant now moves for issuance of final judgment. ECF No. 61. Plaintiff Jason Eastman opposes this motion and argues that the Supreme Court's

holding in *Obduskey* was limited, and the activities that he alleges in his amended complaint, ECF No. 34, fall outside of the scope of *Obduskey*.  ECF No. 62.  This motion became ripe upon plaintiff's filing of a reply, ECF No. 63.  I find that plaintiff's amended complaint, ECF No. 34, fails to state a claim as a matter of law under *Obduskey*, 139 S. Ct. 1029.  However, for the reasons discussed in this order, I find that granting plaintiff leave to amend his complaint would not be futile, and I will not enter final judgment at his juncture.

The Supreme Court affirmed the Tenth Circuit's holding that a business engaged in no more than nonjudicial foreclosure proceedings is not a "debt collector" under the FDCPA, except for the limited purpose of 15 U.S.C. § 1692f(6).  *Obduskey*, 139 S. Ct. at 1038; *Obduskey*, 879 F.3d at 1223.  Section 1692f(6)  prohibits

> **(6)** Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if **(A)** there is no present right to possession of the property claimed as collateral through an enforceable security interest; **(B)** there is no present intention to take possession of the property; or **(C)** the property is exempt by law from such dispossession or disablement.

15 U.S.C. §1692f(6).  The Supreme Court interpreted this provision to indicate that the other provisions of the FDCPA do not apply to the enforcement of security interests through a nonjudicial enforcement procedure.  The present case arises out of NPL's conduct in pursuing a nonjudicial foreclosure on Jason Eastman's home.  However, Mr. Eastman argues that NPL's activities fall outside of the purview of the Supreme Court's holding in *Obduskey* because NPL engaged in activities that are more than security-interest enforcement.  ECF No. 62 at 2.

The Supreme Court addressed such an argument in *Obduskey*.  Mr. Obduskey argued that even if simply enforcing a security interest falls outside the primary definition of "debt collector," McCarthy& Holthus LLP engaged in more than security-interest enforcement by

sending notices that any ordinary homeowner would understand as an attempt to collect a debt

backed up by the threat of foreclosure. In response the Supreme Court stated:

> We do not doubt the gravity of a letter informing a homeowner that she may lose
> her home unless she pays her outstanding debts. But here we assume that the
> notices sent by McCarthy were antecedent steps required under state law to enforce
> a security interest . . . This is not to suggest that pursuing nonjudicial foreclosure is
> a license to engage in abusive debt collection practices like repetitive nighttime
> phone calls; enforcing a security interest does not grant an actor blanket immunity
> from the Act. But given that we here confront only steps required by state law, we
> need not consider what other conduct (related to, but not required for, enforcement
> of a security interest) might transform a security-interest enforcer into a debt
> collector subject to the main coverage of the Act.

*Obduskey*, 139 S. Ct. at 1039. Justice Sotomayor wrote a separate concurrence to

emphasize this point:

> Indeed, in addition to the unnecessary and abusive practices that the Court notes, I
> would see as a different case one in which the defendant went around frightening
> homeowners with the threat of foreclosure without showing any meaningful
> intention of ever following through. There would be a question, in such a case,
> whether such an entity was in fact a "business the principle purpose of which is the
> enforcement of security interest," see §1692(a), or whether it was simply using that
> label as a stalking horse for something else.

*Id.* at 1041.

Motivating the Supreme Court's holding in part was the observation that conflicts

exist between the FDCPA and state law related to nonjudicial foreclosure proceedings.

*Id.* at 1037. ("[W]e think Congress may well have chosen to treat security-interest

enforcement differently from ordinary debt collection in order to avoid conflicts with

state nonjudicial foreclosure schemes."). This justification becomes less relevant where

the security-interest holder is not attempting to pursue a nonjudicial foreclosure, but only

threatening foreclosure without taking any steps toward such in order to collect a debt.

The Tenth Circuit in *Obduskey* excluded from its purview only "aggressive collection

efforts" in pursuit a nonjudicial foreclosure, *Obduskey*, 879 F.3d at 1223 (10th Cir.), but the Supreme Court seems to contemplate a wider category of conduct, that which is "related to, but not required for, enforcement of a security interest" as conduct that could place a security-interest enforcer into the purview of the main coverage of the FDCPA, *Obduskey*, 139 S. Ct. at 1039.

   Though the Supreme Court affirmed that a business "engaged in no more than the kind of security interest enforcement at issue here – nonjudicial foreclosure proceedings" falls outside of the purview of the FDCPA (except for the limited purpose of §1692f(6)), *Obduskey*, 139 S. Ct. at 1031, it also made clear that the fact that a defendant holds a security interest should not be the end of the inquiry, *id.* at 1039-1040. While the Supreme Court characterized the actions of McCarthy in *Obduskey* as good-faith actions necessary to pursue a nonjudicial foreclosure under state law, Mr. Eastman alleges that NPL threatened foreclosure in an attempt to collect an inflated debt balance. ECF No. 34 at ¶19. He argues in his response to NPL's motion for entry of judgment that NPL acted not with an intent to enforce its security interest, but only to collect "long defaulted debt." ECF No. 62 at 2. He further alleges that NPL contacted Jason Eastman's parents Mary and Larry Eastman who did not owe the debt that NPL was trying to collect underlying the mortgage on Jason's home to "enlist her [sic] in its collection efforts." ECF No. 34 at ¶¶16-17. At issue here is whether Mr. Eastman's allegations of NPL's conduct are sufficient to "transform a security-interest enforcer into a debt collector subject to the main coverage of the Act." *Obduskey*, 139 S. Ct. at 1040.

From the amended complaint, ECF No. 34, it is unclear to me which of NPL's alleged actions were good faith efforts to pursue a nonjudicial foreclosure under Colorado state law. Though Colorado state law on nonjudicial foreclosure proceedings was not briefed and is not at issue, I am doubtful that repeated phone calls and communications with a homeowner's parents are required to pursue a nonjudicial foreclosure under Colorado state law. The Supreme Court contemplated practices that were abusive or unnecessary to pursue a nonjudicial foreclosure as actions that could place a security-interest enforcer into the realm of a "debt collector." However, without more detail as to the nature of NPL's communications with Mr. Eastman's parents, I cannot plausibly infer that NPL's conduct "related to, but not required for, enforcement of a security interest," *id.* at 1040, was sufficient and pervasive enough to push NPL into the realm of a debt collector.

Justice Sotomayor, in her concurrence, suggests that a security-enforcer's intent is relevant to this inquiry- that a security-enforcer who has no meaningful intention of pursuing a foreclosure may simply be using the label as "a stalking horse." To this point, Mr. Eastman's allegation that NPL used a threat of foreclosure to attempt to collect an inflated debt balance, is conclusory. ECF No. 34 at ¶19. However, Mr. Eastman has previously asked for leave to amend his complaint, ECF No. 39, though I denied this request, ECF No. 57. In light of the Supreme Court's decision in *Obduskey*, I do not find that it would be futile to permit him to amend his complaint to allege more specifically how actions undertaken by NPL were either abusive or unnecessary to the nonjudicial foreclosure process and on the issue of whether NPL ever showed a "meaningful

intention" of following through with nonjudicial foreclosure of Mr. Eastman's home.  I

note that the deficiencies with plaintiff's amended complaint in light of *Henson v.*

*Santander Consumer USA Inc.*, 137 S.Ct. 1718 (2017) and the "principal purpose"

definition that I discussed in my last order still exist.  ECF No. 57 at 4-7.  If plaintiff

elects to file an amended complaint, it must not only overcome those deficiencies but also

the deficiencies discussed in this order in relation to *Obduskey*, 139 S. Ct 1029.

## **ORDER**

The motion for issuance of final judgment, ECF No. 61, is DENIED.  I grant Mr.

Eastman leave to amend his complaint within 30 days of this order.  Should Mr. Eastman

not amend his complaint within 30 days, I direct the clerk to enter final judgment in this

case for Defendant NPL Capital, LLC.

DATED this day 15th of April, 2019.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge